IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | Cr. No. 07-100S |
| | ) | |
| RAFAEL FERNANDEZ-ROQUE, | ) | |
| a/k/a Rafael Hernandez-Roque | ) | |

GOVERNMENT'S MEMORANDUM REGARDING
THE BOOKING EXCEPTION TO *MIRANDA* AND WAIVER OF *MIRANDA*

The government submits the following memorandum of law to address the question raised on February 13, 2008, as to whether the booking exception applies in the instant case to the requirement of *Miranda* warnings, as well as whether there is sufficient evidence of the Defendant's waiver of *Miranda*.

**The Booking Exception to *Miranda*.**

Routine booking questions do not constitute interrogation because such questions are not designed to elicit incriminating responses, and thus, do not require *Miranda* warnings. United States v. Reyes, 225 F.3d 71 (1st Cir. 2000). In Reyes, after the Defendant was arrested on drug conspiracy charges, an immigration agent read the Defendant the standard *Miranda* warnings, in Spanish. At the interview, when asked in Spanish whether he understood the rights read to him, the Defendant replied that he did. The agent did not seek a waiver of the Defendant's *Miranda* rights. The First Circuit held, that routine questions fall within the scope of the booking exception. Whether the booking exception is applicable is determined using an objective standard: "whether the questions and circumstances were such that the officer should reasonably

have expected the question to elicit an incriminating response." Reyes, 225 F.3d at 76-77. In Reyes, questions requesting the Defendant's name, date of birth, and social security number fell within the booking exception to *Miranda* 's warning requirement. Id. The Court went on to recognize, "that individuals under arrest, particularly those who are in fact guilty of some criminal activity, may sometimes feel tempted to lie about even such basic facts as their identities (to which name, date of birth, and social security are all incidental). Law enforcement agents, through their experience, may often be aware of such temptations, and they may even harbor suspicions in some cases that a particular individual is about to lie. However, we cannot ask them to therefore forego all routine procedures and detain an individual without knowing anything about him, not even what to call him in the jail log." Id. at 77. See also, United States v. Kiam, 432 F.3d 524, 529-31 (3d Cir. 2006)(*Miranda* warnings not required for routine immigration questions to determine alienage, even if arrestee suspected of other criminal conduct).

In Roque's case, the immigration agent, Ryan Arnold, testified that he approached the Defendant, identified himself as an immigration agent, presented his credentials to the Defendant, and then *Mirandized* the Defendant in the Spanish language. Agent Arnold testified that Mr. Roque indicated that he understood his *Miranda* warnings. Tr. Vol 1, page 102. Agent Arnold further testified that he asked Roque a series of questions related to his immigration status and his identity; standard questions to determine his alienage. Tr. Vol 1, pages 102 - 103. These standard questions included asking the Defendant his name, his date of birth, country of birth, city of birth, mother and father's name, where he was employed, and where he currently resided. Tr. Vol.1, page 103. The Defendant's responses to these questions are admissible,

without the need for a showing the Defendant's waiver of Miranda warnings.[1]

**Waiver of *Miranda*.**

The remaining issue is whether the evidence regarding Roque's waiver of his *Miranda* warnings is sufficient to allow into evidence his oral admission as to ownership of his cell phone.[2] Agent Arnold testified that he read Roque his rights and that he understood the *Miranda* warnings. Tr. Vol. 1, page 102. Thus, the issue is whether the Defendant waived his *Miranda* rights. Agent Arnold also testified as to exactly what he meant when he stated that he *Mirandized* Defendants; and that this included the question, "Are you willing to waive these rights and speak with me?" Tr. Vol.1, pages 117 - 118. Admittedly, the record would be clearer if the government had asked the follow up question, "What was his response to that question?"[3] However, the reasonable inference can be drawn, that Agent Arnold, an experienced agent, would not have continued asking questions if Roque had said anything but yes. Although an express waiver is not necessary, court will not presume a waiver from a defendant's silence or subsequent confession alone. See Miranda v. Arizona, 384 U.S. 436, 475 (1966). However, in North Carolina v. Butler, the Supreme Court stated that silence may constitute a valid waiver when coupled with an understanding of the rights and conduct indicating waiver. 441 U.S. 369, 373, 375-76 (1979)(explicit waiver not necessary to show defendant waived right to remain silent

---

[1] These responses include that the Defendant lived somewhere in Providence, but did not know the address, as well as Defendant's response to the question regarding his employment, that he worked at the garage for Juan Carlos.

[2] The government believes that this admission was not in response to a routine booking question, and therefore, the dictates of *Miranda* apply.

[3] The Court may take judicial notice that the prosecutor is not perfect.

because defendant volunteered incriminating statements); see e.g. Bui V. DiPaolo, 170 F.3d 232, 238 (1st Cir. 1999)(valid waiver properly inferred, because Defendant responded selectively to questions, asking, "Who said I did this?" after answering "no" to prior question); Flamer v. Del., 68 F.3d 710, 719-20 (3d Cir. 1995)(valid waiver because defendant never invoked his rights, told police he knew his rights, and answered questions); U.S. v. Cardwell, 433 F.3d 378, 389-90 (4th Cir. 2005)(implied waiver properly inferred because defendant received *Miranda* warnings, indicated understanding of warnings, failed to assert rights, and subsequently answered questions).

In the alternative, if the Court wishes to avoid any legal issue, based upon a factual matter, the government requests that the motion to suppress be re opened for the limited purpose of providing limited testimony. The government attorney spoke with Agent Arnold following the Court's hearing on February 13, 2008. Agent Arnold stated that, in response to the last question he posed to the Defendant, Roque when reading him the *Miranda* warnings from the *Miranda* card, "Are you willing to waive these rights and speak with me?" Tr. Vol.1, pages 117 - 118, both Roque and Betancourt agreed.

## III. CONCLUSION

For all of the foregoing reasons, Defendant's admissions should be admitted at trial.

Respectfully submitted,

UNITED STATES OF AMERICA

By its Attorneys,

ROBERT CLARK CORRENTE
United States Attorney

/s/ MARY ROGERS

MARY ROGERS
Assistant U.S. Attorney
RI Bar #3107
U.S. Attorney's Office
50 Kennedy Plaza, 8th FL
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
email mary.rogers@usdoj.gov

CERTIFICATION OF SERVICE

On this 15th day of February, 2008, I caused the Government's Memorandum of Law Regarding the Booking Exception to *Miranda* and Waiver of *Miranda* to be filed electronically and it is available for viewing and downloading from the ECF system.

Electronic notification:

Andrew Berg, Esq.
128 Dorrance Street, Suite 400
Providence, RI 02903

/s/ MARY ROGERS

MARY ROGERS
Assistant U.S. Attorney
RI Bar #3107
U.S. Attorney's Office
50 Kennedy Plaza, 8th FL
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
email mary.rogers@usdoj.gov