UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA

V. C.R. No. 07-100-3 S

RAFAEL FERNANDEZ-ROQUE

**DEFENDANT'S SUPPLEMENTAL MEMORANUDM IN SUPPORT OF HIS MOTION TO SUPPRESS**

Defendant, Rafael Fernandez-Roque, has filed a Motion To Suppress alleged statements made following his arrest by the government on May 30, 2007. On February 13, 2008, this Court directed the parties to file supplemental memoranda addressing issues surrounding the lack of an express waiver of *Miranda* rights by Mr. Fernandez-Roque, and whether the "booking exception" to *Miranda* applies. For the following reasons, Mr. Fernandez-Roque requests all in-custody statements be suppressed at trial.

**A. The Booking Exception To *Miranda* Does Not Apply.**

At hearing, and in its Memorandum, the Government seeks to sidestep the entire issue of whether a waiver of *Miranda* rights occurred by claiming that the questioning of Mr. Fernandez-Roque was merely for the purpose of booking. However, both the facts and caselaw require rejection of this assertion.

In support of its argument, the Government cites *United States v. Reyes*, 225 F.3d 71 (1st Cir. 2000), for the proposition that questions asked during the administrative booking process do not require prior "Mirandization" of the accused. However, *Reyes* is easily distinguishable from the facts here. In *Reyes*, an INS agent assigned to work with the DEA "interviewed appellant for the purpose of 'booking' him; i.e., obtaining the information required by the DEA's standard personal history form for administrative

purposes." 225 F.2d at 74. The *Reyes* Court held that this generic questioning relating to "name, date of birth, and social security number - - [fell] within the booking exception to *Miranda*'s warning requirement." *Id*. at 76.

On the other hand, the facts in the instant case demonstrate that Agents Arnold and Naylor were not questioning Mr. Fernandez-Roque merely for the purpose of filling in booking sheets, but rather, were expressly seeking incriminating information. At the outset, both Agent Naylor and Agent Arnold testified that a member of the Massachusetts State Police was already present in the cellblock performing booking procedures. To this end, Agent Naylor stated, "There was a Massachusetts state trooper there [in the cellblock] doing the booking who spoke Spanish. He was interviewing [Mr. Fernandez-Roque] enough to do the booking sheets and things like that, sir." Tr. Vol. 3, p. 191. Agent Arnold similarly testified that when he and Agent Naylor were in the cellblock, Mr. Fernandez-Roque "was in the process of being booked" by the Massachusetts State Police. Tr. Vol. 2, p. 25. Accordingly, neither Agent Naylor nor Agent Arnold were questioning Mr. Fernandez-Roque for the purpose of booking, but rather, were seeking incriminating information.

In point of fact, during cross-examination, Agent Arnold admitted his goal was to obtain incriminating information. To this end, he testified as follows:

> Q: [by Mr. Berg] And I think you used the term or you said something about trying to determine alienage and deportability?
>
> A: Yes, sir.
>
> Q: Is that what your goal was at that point?
>
> A: That was one of the goals, to see if we could place an immigration detainer on them.

> Q: Is it also one of your goals to find out if this person might have committed a criminal offense, such as illegal reentry?
>
> A: Yes, sir.
>
> Q: So it was also one of your goals to find out if a crime had occurred; is that correct?
>
> A: Yes, sir.

Tr. Vol. 2, pp. 23-24.

In Agent Naylor's testimony, he admits to participating in the questioning by feeding Agent Arnold questions. To this end, Agent Naylor testified as follows:

> Q: [by Ms. Rogers] And were you asking or participating in any way with Agent Arnold?
>
> A: Yes. I was asking him some questions to ask. I asked him – one of the questions, you know, did they tell you where they work was one question. Something about their employment. And another question was on the phones, I asked whose phone was whose [sic].

Tr. Vol. 3, pp. 108-09.

Clearly, the questioning by Agents Arnold and Naylor was not part of the routine booking process; which was being done by state law enforcement; but rather, was an interrogation designed to elicit incriminating statements. Consequently, the booking exception to *Miranda* does not apply.

The First Circuit, as well as most sister courts considering the issue in like circumstances have similarly concluded. In *United States v. Doe*, 878 F.2d 1546 (1st Cir. 1989), the case for which the *Reyes* Court relied, the First Circuit recognized, "The cases that create [the booking exception] . . . note that it does not apply where the law enforcement officer, under the guise of asking for background information, seeks to elicit information that may incriminate." 878 F.2d at 1551; *citations omitted.* The *Doe* Court

went on to suppress un-*Mirandized* statements that were aimed at determining alienage for the purpose of potential prosecution. Other courts have similarly held. *See e.g. United States v. Parra*, 2 F.3d 1058 (10th Cir. 1993)(Questions asked by immigration agent for purpose of obtaining incriminating information regarding illegal alienage, that were separate from booking process, do not fall under booking exception); *United States v. Carvajal-Garcia*, 54 Fed. Appx. 732, 2002 LEXIS 25434 (3rd Cir. 2002)(INS agents questioning of suspected illegal immigrant did not fall under booking exception because defendant was already booked, and the questions were designed to seek incriminating statements regarding immigration status); *United States v. Gonzalez-Sandoval,* 894 F.2d 1043 (9th Cir. 1990)(Questioning by border patrol agent of defendant already in holding cell pending criminal charges held improper in absence of *Miranda* warnings).

Accordingly, because Agents Arnold and Naylor's interrogation was not for the purpose of booking Mr. Fernandez-Roque, the Government's attempt to invoke this exception must fail.

**B. <u>The Government Has Failed To Establish A Miranda Waiver</u>.**

Apparently conceding that, at the very least, the questions relating to the ownership of the cell phone were not "booking" questions, the Government asserts that a waiver can be implied by Mr. Fernandez-Roque's actions. However, by *Miranda*'s very terms, a waiver cannot be implied. In this regard, the *Miranda* Court held as follows:

> [A] valid waiver will not be presumed simply from the silence of the accused after warnings are given or simply from the fact that a confession was in fact eventually obtained. A statement we made in *Carnley v. Cochran*, 369 U.S. 506, 516 (1962) is applicable here: "Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not a waiver." *See also Glasser v. United States*, 315 U.S. 60 (1942) Moreover, where in-custody

> interrogation is involved, there is no room for the contention that the privilege is waived if the individual answers some questions or gives some information on his own prior to invoking his right to remain silent when interrogated. *fn. omitted.*

*Miranda*, 384 U.S. at 475-476. The *Miranda* Court characterized the government's burden of proving a waiver of rights as a "heavy." *Id.* at 475.

In the instant case, there simply is no evidence on the record to establish any kind of waiver by Mr. Fernandez-Roque. The only factor the government can cite in support of its argument is that Mr. Fernandez-Roque stated he understood his rights, and, "[T]hat Agent Arnold, an experienced agent[1], would not have continued asking questions if Roque had said anything but yes." Government's Memorandum at 3. However, the Government is asking this Court to do what the *Miranda* Court specifically forbade: implying a waiver from a silent record, or the fact a statement was subsequently made by the accused.

All of the cases cited by the Government in opposition are inapposite and distinguishable. *See e.g. North Carolina v. Butler*, 384 U.S. 436 (1979)(Defendant specifically indicated willingness to speak, but would not sign **written** waiver form); *Bui v. DiPaolo*, 170 F.3d 232 (1st Cir. 1999)(Spontaneous statements by defendant after twice being informed of his rights and made during back and forth conversation after defendant stated "the Constitution will protect me"); *Flamer v. Delaware*, 68 F.3d 710 (3rd Cir. 1995)(Defendant made series of self-serving statements in attempt to deflect responsibility for crimes); *United States v. Cardwell*, 433 F.3d 378 (4th Cir.

---

[1] Although the record does indicate that Agent Arnold has been with ICE (and its predecessor INS) for five years, and was a border patrol agent four years, there is absolutely no evidence regarding how many times Agent Arnold has Mirandized and interrogated criminal suspects. Consequently, whether he is "experienced" in ways that are germane to this case is questionable.

2005)(English speaking defendant made incriminating statement during two hour drive, and during the course of a casual back and forth conversation).

On the other hand, recent and similar cases from Courts within this Circuit have recognized the prohibition on implied waivers, and suppressed statements not preceded by an express waiver. In *United States v. Harty*, 476 F.Supp.2d 17, 26-28 (D.Mass. 2007), the Court held a waiver will not be implied despite evidence the defendant was informed of his rights, and subsequently made voluntary statements. *United States v. Earle*, 473 F.Supp.2d 131, 140 (D.Mass. 2005), contains a detailed discussion of the "paradigms in which an implied waiver of *Miranda* rights are most often found." To this end, the Court cited the First Circuit as follows:

> [T]here are certain types of cases in which courts routinely conclude that a defendant who has professed an understanding of his right to remain silent has waived that right. For example, a defendant will be held to have effected a waiver when, after receiving warnings and asserting (equivocally or unequivocally) a right to remain silent, he spontaneously recommences the dialogue with his interviewers. *See Edwards v. Arizona,* 451 U.S. 477, 484-85, 101 S. Ct. 1880, 68 L. Ed. 2d 378 (1981); *United States v. Conley,* 156 F.3d 78, 83 (1st Cir. 1998). So, too, if a defendant's incriminating statements were made either as part of a "steady stream" of speech, *Bradley v. Meachum,* 918 F.2d 338, 342 (2d Cir. 1990), or as part of a back-and-forth conversation with the police, *Baskin v. Clark,* 956 F.2d 142, 146 (7th Cir. 1992), courts regularly have found waivers. A waiver of *Miranda* rights also may be implied when, after having received *Miranda* warnings, a criminal defendant responds selectively to questions posed to him. *See United States v. Soliz,* 129 F.3d 499, 503 (9th Cir. 1997); *United States v. Eaton,* 890 F.2d 511, 513-14 (1st Cir. 1989) (Breyer, J.); *United States v. Chong,* 829 F.2d 1572, 1574 (11th Cir. 1987).

*Earle*, 473 F.Supp.2d at 140-41; *citing Bui,* 170 F.3d at 240.

The Judge in *Earle,* after noting the cited authority, would not imply a *Miranda* waiver in the face of a silent record. Similarly, in view of the fact that the circumstances here do not fit into any of the above-outlined scenarios, the Government's suggestion of an implied waiver should be rejected.

C. **The Government's Request For A "Do-Over" Will Cause Undue Delay And Prejudice.**

Obviously recognizing that it did not meet its burden to prove a waiver of *Miranda* rights,[2] the Government concludes its Memorandum by requesting this Court re-open the hearing for the limited purpose of allowing Agent Arnold to fix the deficiency. This requested limited relief is not realistic, and would greatly prejudice Mr. Fernandez-Roque.

First, if this Court re-opens the hearing, fairness would dictate that the proceeding not be limited to Agent Arnold's testimony. Undersigned counsel immediately recognized during Agent Arnold's hearing testimony (which was near the beginning of the proceedings) that a waiver had not been established. Consequently, counsel's strategy during the entire hearing was altered. For example, counsel did not engage in extensive cross-examination of Agent Naylor because attacking his credibility was not necessary, and could open the door for further testimony regarding a possible waiver. Further, although strongly considered by counsel, he decided not to call witnesses to attack the fact that Agent Arnold's Spanish was unintelligible in several key respects.[3] Accordingly, if this Court were to grant the Government's request to re-open the hearing,

[2] In footnote 3 of its Memorandum, the Government appears to acknowledge that the record did not establish an express waiver, and attributes it to the fact that "the prosecutor is not perfect." However, in the sphere of jurisprudence related to ineffective assistance of counsel for defendants, it is recognized that errors by attorneys frequently occur. Nevertheless, the accused is not entitled to perfection, but rather, can only expect competence. Similarly, the Government cannot always expect perfection, and like criminal defendants, must live with the consequences of its errors.

[3] The record contains the following statement by counsel for Mr. Fernandez-Roque: "In addition [to not conducting further cross-examination of Agent Naylor], I wanted to let the Court know, I did mention a possible witness yesterday. I will not be calling any witnesses." Tr. Vol. 4, p.3.

then fairness dictates that such supplemental proceedings would not be limited to the testimony of Agent Arnold. Rather, the government should be required to recall all relevant witnesses, and Mr. Fernandez-Roque should be allowed to present any evidence he requires to rebut the Government's case. Consequently, the government's request for a limited second bite at the apple is neither fair, nor realistic.

Further, the re-opening of the proceedings because of an error of by the Government, and at its request, would cause an undue delay in the case, to the prejudice of Mr. Fernandez-Roque. Mr. Fernandez-Roque has been incarcerated on these charges (and the related state charges) since May of 2007. Through counsel, he has repeatedly indicated that he wants his day in court as soon as possible. If this Court grants the Government's request to re-do the hearing, the trial will undoubtedly be delayed in violation of Mr. Fernandez-Roque's right to a speedy trial.

For these reasons, the request to re-open the proceedings should be rejected, and this matter should proceed to trial as currently scheduled.

## **Conclusion**

For the foregoing reasons, and other presented during the suppression motion proceedings, Mr. Fernandez-Roque respectfully requests that his in-custody statements,

and any derivative evidence be suppressed at trial.

Respectfully submitted,

RAFAEL FERNANDEZ-ROQUE
By his attorney

/S/ Andrew Berg
ANDREW BERG Bar No. 4754
Sammartino & Berg LLP
128 Dorrance Street
Suite 400
Providence, RI 02903
(401) 274-0113
(401) 274-0175

**CERTIFICATION OF SERVICE**

I hereby certify that on this 18th day of February, 2008, that I caused a true copy of this Memorandum to be filed, via electronic case filing, to the following counsel of record:

Assistant U.S. Attorney Mary Rogers
Office of the United States Attorney
50 Kennedy Plaza, Fleet Center
8th Floor
Providence, RI 02903

/s/ Andrew Berg
**ANDREW BERG**