UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| United States of America, Plaintiff, | : | |
| v. | : | CR No. 07-100 S |
| Rafael Fernandez-Roque, Defendant. | : | |

**ORDER**

After an evidentiary hearing that stretched over several intermittent days from January 14, 2008 to February 13, 2008, Defendant Rafael Fernandez-Roque ("Defendant") moved for the suppression of post-arrest statements made to investigating agents during an interrogation.[1] Defendant claimed that suppression was warranted because the agents never obtained a valid waiver of his Miranda rights. The Court denied the motion to suppress, and Defendant subsequently was convicted of conspiracy to distribute and to possess with intent to distribute cocaine. However, for the following reasons, the Court concludes that it erred in denying the motion.

I.

In the early morning hours of May 30, 2007, during the culmination of a multi-agency drug investigation, the Jeep Cherokee

---

[1] Also participating in the hearing was co-defendant Adolfo Verdugo, whose own motion to suppress was denied in open court at the close of the hearing on February 13, 2008. This order has no relation to Verdugo's motion.

in which Defendant was a passenger was stopped by the Massachusetts State Police. On the scene to assist were agents from the U.S. Drug Enforcement Administration ("DEA"), and Special Agent Ryan Arnold of the Bureau of Immigration and Customs Enforcement ("ICE").[2] On the backseat of the Jeep, in the plain view of the agents and state trooper, was a large duffle bag containing, it was later confirmed, approximately 29 kilograms of cocaine. A strong chemical smell emanated from the vehicle when the doors were opened. Defendant, along with the driver of the vehicle, was arrested and taken to the Massachusetts State Police station at Charlton where, for the first time, he was advised of his Miranda rights by Special Agent Arnold. Specifically, Special Agent Arnold testified as follows:

> MR. BERG: If we could focus on the defendant, Fernandez-Roque.
> SPECIAL AGENT ARNOLD: I approached them, identified myself as an immigration agent, presented my credentials to them and then Mirandized him in the Spanish language verbally, and then asked him a series of questions relating to his immigration status and his identity.
> Q. Did Mr. Fernandez-Roque indicate that he understood his Miranda warnings?
> A. Yes, he did.

Hrg. Trn., Jan. 14, 2008, 102:15-24. After this exchange, Special Agent Arnold proceeded to question Defendant. Defendant allegedly stated that: (1) he was unsure of his address in Providence and

---

[2] The arrest was preceded by surveillance of Defendant, as well as other individuals; however, the details of the pre-arrest investigation are not germane to the Miranda issue.

that he worked for "Juan Carlos at a garage"; (2) he was the owner of a silver T-Mobile telephone found on his person; and (3) he was a Mexican national who was in the United States illegally.

II.

Defendant's claim that no valid waiver of his Miranda rights was ever obtained hinged on his argument that the testimony of Special Agent Arnold was devoid of any clear evidence that Defendant waived his Miranda rights and thus, since ordinarily there is a presumption against waiver, the Government could not carry its burden to establish a valid waiver by Defendant.

Defendant correctly pointed out that a heavy burden rests upon the government to prove that a person in custody "knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." Miranda v. Arizona, 384 U.S. 436, 475 (1966). However, he contended inaccurately that federal courts apply a formulaic approach in determining whether this burden has been satisfied.[3] Just as the signing of a boilerplate statement that a defendant is knowingly waiving his rights will not satisfy the government's burden, the absence of such a statement will not preclude, as a matter of law, the

[3] Defendant went too far in asserting that "by Miranda's very terms, a waiver cannot be implied." Def.'s Supp. Mem. Supp. Mot. Dismiss, at 4. See, e.g., United States v. Garcia, 983 F.2d 1160, 1169 (1st Cir. 1993); see also Bui v. DiPaolo, 170 F.3d 232, 240 (1st Cir. 1999)(cataloguing examples of implied waivers).

possibility of an effective waiver. See United States v. Hayes, 385 F.2d 375, 377 (4th Cir. 1967).

A.

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." Although this right has been fundamental since the Constitution was ratified, it arguably was not truly meaningful until the Supreme Court issued its decision in Miranda. In Miranda, the Supreme Court held that the inherently coercive circumstances of custodial interrogation require law enforcement officials to inform a suspect in custody that: (1) he has the right to remain silent; (2) his statements may be used against him at trial; (3) he has a right to an attorney during questioning; and (4) if he cannot afford an attorney, one will be appointed to represent him. 384 U.S. at 479; see also Dickerson v. United States, 530 U.S. 428, 438-40 (2000). Although it is well established that an individual may waive these rights and answer questions without an attorney present, Miranda, 384 U.S. at 479, unless the government demonstrates that the required warnings have been given and have been knowingly, intelligently, and voluntarily waived, it may not introduce at the trial of the interrogated individual any evidence obtained from its questioning. Id.; Moran v. Burbine, 475 U.S. 412, 421 (1986); United States v. Christian, 571 F.2d 64, 67-69 (1st Cir. 1978).

"The requirement of warnings and waiver of rights is a fundamental with respect to the Fifth Amendment privilege and not simply a preliminary ritual to existing methods of interrogation." Miranda, 384 U.S. at 476. It is not sufficient for a law enforcement officer to perfunctorily read a person in custody his Miranda rights. Christian, 571 F.2d at 67-68. The government has an affirmative obligation to ensure that the person understands those rights and voluntarily and intelligently relinquishes them. Moran, 475 U.S. at 421.

The Supreme Court has explained that the inquiry concerning whether Miranda rights have been waived "voluntarily, knowingly and intelligently . . . has two distinct dimensions." Id. First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that Miranda rights have been waived. Id.

The government bears the burden of proof concerning a motion to suppress statements that a defendant asserts were obtained in violation of his Miranda rights. Miranda, 384 U.S. at 475;

Colorado v. Connelly, 479 U.S. 157, 168 (1986). The knowing, intelligent, and voluntary waiver of those rights must be proven by a preponderance of the evidence. Connelly, 479 U.S. at 168. The government's burden is a heavy one, see Miranda, 384 U.S. at 475; North Carolina v. Butler, 441 U.S. 369, 373 (1979) ("the prosecution's burden is great"), and, as the First Circuit has explained: "[w]hat is required is a clear showing of the intention, intelligently exercised, to relinquish a known and understood right." United States v. Garcia, 983 F.2d 1160, 1169 (1st Cir. 1993) (citing Patterson v. Illinois, 487 U.S. 285, 292 (1988) and United States v. Porter, 764 F.2d 1, 7 (1st Cir. 1985)). In Porter, the First Circuit explained further:

> Merely asking the accused whether he understood his rights does not satisfy the duties of an interrogating officer or make any statement the accused might then make admissible. Miranda requires the interrogating officer to go further and make sure that the accused, knowing his rights, voluntarily relinquishes them.

United States v. Porter, 764 F.2d at 7 (citing Christian, 571 F.2d at 64). Thus, "a valid waiver will not be presumed simply from the silence of the accused after warnings are given or simply from the fact that a confession was in fact eventually obtained." Butler, 441 U.S. at 373 (quoting Miranda, 384 U.S. at 475); see also Christian, 571 F.2d at 68. However:

> defendant's silence, coupled with an understanding of his rights and a course of conduct indicating waiver, may [] support a conclusion that a defendant has waived his rights. The courts must presume that a defendant did not waive his rights; the prosecution's burden is great; but

> in at least some cases waiver can be clearly inferred from the actions and words of the person interrogated.

Butler, 441 U.S. at 373; see also Bui v. DiPaolo, 170 F.3d 232, 240 (1st Cir. 1999); United States v. Andrade, 135 F.3d 104, 107 (1st Cir. 1998). Thus, in Butler, the Supreme Court affirmed that "an express statement is not invariably necessary to support a finding that the defendant waived either the right to remain silent or the right to counsel." Bui, 170 F.3d at 240; see also Garcia, 983 F.2d at 1169.

B.

Whether Miranda rights have been knowingly and voluntarily waived "must be determined on 'the particular facts and circumstances surrounding [the] case, including the background, experience, and conduct of the accused.'" Butler, 441 U.S. at 374-75 (quoting Johnson v. Zerbst, 304 U.S. 458, 464 (1938)); see also Andrade, 135 F.3d at 107 ("The waiver issue, it appears, must be decided on the facts."). As noted earlier, however, "[o]nly if the totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that Miranda rights have been waived." Moran, 475 U.S. at 421 (internal quotation and citation omitted).

Here, it is uncontroverted that the Defendant was fully advised of his rights and that he understood them. The question, then, is whether the Defendant relinquished his right to remain

silent voluntarily, or as the result of intimidation, coercion, or deception. Id. ("[W]aiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.").

On this question, the spare facts of this case place it at the fulcrum of tension in the decisional law regarding Miranda rights. On the one hand, there are cases such as Miranda and Connelly in the Supreme Court, and Garcia and Porter in this Circuit, that emphasize the government's heavy burden to prove a voluntary and knowing waiver, and which imply, at least, that silence followed by answers to questioning, with nothing more, might be insufficient meet the burden. On the other hand, cases like Butler and Bui make clear that a waiver may be implied from conduct, including answering questions. In any event, the determination made by any district court depends on the totality of the circumstances, and here the totality suggests (if only just barely) that a lawful waiver did not occur. A review of the essential record is required: After being fully advised of his rights and acknowledging that he understood them, Defendant answered questions posed by the investigating officers. Although there is no evidence that Defendant's decision to answer these questions was influenced by intimidation, coercion, or deception, that is primarily because

there is almost no evidence at all.[4] That is, there is no evidence relating to Defendant's conduct that would allow this Court to determine that Defendant voluntarily and knowingly waived his Miranda rights. For example, a defendant may effect a waiver when, after receiving warnings and asserting a right to remain silent, he spontaneously recommences the dialogue with his interviewers. See Bui, 170 F.3d at 240. Waiver may also be found where a defendant's incriminating statements were made either as part of a "steady stream" of speech or as part of a back-and-forth conversation with the police. Id. A waiver of Miranda rights also may be implied when, after having received Miranda warnings, a criminal defendant responds selectively to questions posed to him. Id. None of these circumstances exist here.[5]

---

[4] The Court is aware that Defendant chose not to offer any evidence or produce any witnesses putting into question his understanding of the warnings given him, or the voluntariness of his subsequent statements. Compare United States v. Earle, 473 F. Supp. 2d 131, 137-38 (D. Mass. 2005) (defendant was read his rights on the side of a busy highway and there was no evidence that he heard or understood them). But a defendant is not obligated to testify or to offer other evidence (and certainly there tactical reasons why he might decide to forego testifying), and a court cannot supply evidence that is lacking. Cf. Griffin v. California, 380 U.S. 609 (1965) (court's acquiescence to prosecutor's comment on defendant's failure to testify was the equivalent of an offer of evidence and its acceptance).

[5] The Government requested that the Court reopen the evidentiary hearing on Defendant's motion to suppress for the limited purpose of curing any deficiencies in the record regarding whether Defendant waived his Miranda rights. The Court believed then, and still believes, that reopening the hearing after six days of testimony and argument would not have been appropriate. The Government presented its evidence and rested, the defendants made

Thus, while "in at least some cases waiver can be clearly inferred from the actions and words of the person interrogated," Butler, 441 U.S. at 373, here the Court simply cannot stretch to find a waiver. The decisive rule is that which was originally laid down by the Supreme Court: "If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel. . . . [A] valid waiver will not be presumed simply from the silence of the accused after warnings are given or simply from the fact that a confession was in fact eventually obtained." Miranda, 384 U.S. at 475. Therefore, the Court finds that the Government did not meet its burden of showing that the disputed statements were constitutionally obtained from Defendant, and the Court erred in concluding that it did.

C.

The Court is not alone in finding a lack of waiver on such a minimal record. Recently, in United States v. Harty, 476 F. Supp. 2d 17 (D. Mass. 2007), the district court was presented with a defendant that received and understood the Miranda warnings but

---

tactical decisions based on that record, and this Court ruled on the record before it. Reopening the hearing would have caused great delay in, and possibly severance of, the defendants' trials.

never expressly waived his rights. Id. at 26. Finding that the circumstances were insufficient to support an implied waiver, the district court suppressed the incriminating statements made by the defendant while in custody. Here, as already noted, the record is notable for its lack of circumstances, i.e. the record reveals virtually nothing about what occurred between Defendant's receiving the Miranda warnings and making the allegedly incriminating statements. Thus, while the Court yet finds that "the question is reasonably close," id. at 27, it also believes the scales to be tipped even more favorably toward Defendant than was the case with the defendant in Harty.

One of the reasons this case presented so close a call (beyond the fact that the government did not ask Special Agent Arnold whether the Defendant was asked if he wished to waive his rights) is that there was no video or audio recording of the discussion between Special Agent Arnold and Defendant. The Court is left only with the one-sided - though uncontroverted and incomplete - testimony of Special Agent Arnold. This is unfortunate because so much can be revealed by seeing and hearing the interaction between government authorities and criminal suspects. Tone of voice, facial expressions, and body language, can tell the Court a great deal about the intentions of each participant. In this case, the record does not appear to reflect whether recording equipment was available, though one would naturally assume that such equipment

would be readily available in a Massachusetts State Police barracks. The Supreme Court's emphasis on the "totality of the circumstances" further highlights the importance of video or audio recording. Unless this Court is willing to adopt a "tie goes to the police" mentality (which it is not), then more must be required from the government before the Court will conclude that a valid waiver was given.

III.

Based upon the foregoing, Defendant's motion to suppress, having been erroneously denied, is now hereby GRANTED. It is not clear whether the absence of evidence which should have been suppressed would have made any difference in the conviction of Defendant at trial. Defendant is therefore invited to file a motion consistent with this Order to address this issue. The Government shall file a response, and the Court will hear argument and issue an appropriate order in due course.

It is so Ordered.

Enter:

WESmith

William E. Smith
United States District Judge
Date: 5/20/08