IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Cr. No. 07-100S |
| | ) | |
| RAFAEL FERNANDEZ-ROQUE | ) | |

GOVERNMENT'S MOTION FOR RECONSIDERATION

Comes now the United States of America, by and through its attorneys, Robert Clark Corrente, United States Attorney for the District of Rhode Island, Mary E. Rogers, Assistant U.S. Attorney, and Donald C. Lockhart, Assistant U.S. Attorney, and hereby requests that the Court reconsider its May 21, 2008, post-verdict order suppressing Defendant's statements for the three reasons advanced in the accompanying memorandum of law and those already articulated by the government in its earlier opposition to the pre-trial suppression motion.

Respectfully submitted,

UNITED STATES OF AMERICA

By its Attorneys,

ROBERT CLARK CORRENTE
United States Attorney

/s/ Mary E. Rogers

MARY E. ROGERS (RI Bar #3107)
Assistant U.S. Attorney
U.S. Attorney's Office
50 Kennedy Plaza, 8th FL
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
email mary.rogers@usdoj.gov

DONALD C. LOCKHART
Assistant U.S. Attorney
U.S. Attorney's Office
50 Kennedy Plaza, 8th FL
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
email donald.lockhart2@usdoj.gov

CERTIFICATION

I hereby certify that on the 29th day of May 2008, I caused a copy of the Government's Motion For Reconsideration and Memorandum in Support of the Government's Motion For Reconsideration to be filed electronically and it is available for viewing and downloading from the ECF system.

Electronic notification:

Andrew Berg, Esq.
128 Dorrance Street, Suite 400
Providence, RI 02903.

/s/ Mary E. Rogers
MARY E. ROGERS
Assistant U.S. Attorney
RI Bar #3107
U.S. Attorney's Office
50 Kennedy Plaza, 8th FL
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
email mary.rogers@usdoj.gov

DONALD C. LOCKHART
Assistant U.S. Attorney
U.S. Attorney's Office
50 Kennedy Plaza, 8th FL
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
email donald.lockhart2@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Cr. No. 07-100S |
| | ) | |
| RAFAEL FERNANDEZ-ROQUE | ) | |

MEMORANDUM IN SUPPORT OF
GOVERNMENT'S MOTION FOR RECONSIDERATION

**A. Introduction**

The government asks the Court to reconsider its post-trial ruling suppressing Defendant's statements on Miranda grounds for three main reasons, in addition to those advanced in its earlier opposition to the defense motion to suppress: (1) First Circuit case law indicates that the Court should consider the trial evidence bearing on the suppression issue, and here that evidence shows more clearly than the suppression hearing evidence that Defendant knowingly waived his Miranda rights; (2) in light of the "booking exception" to Miranda many of Defendant's statements were admissible even in the complete absence of Miranda warnings (and regardless of whether he knowingly waived his Miranda rights); and (3) assuming that the Court rejects these two arguments and also finds that admission of the evidence was not harmless, it would lack power to grant a new trial on that basis, because the only procedural vehicle for doing so is Fed. R. Crim. P. 33 and the seven-day period for filing a new trial claim based on the suppression issue has long since passed. The government will respond separately to Defendant's May 23, 2008 filing in which he argues that the admission of the evidence was not harmless.

**B. The Evidence Adduced At Trial Included Proof That Defendant Expressly Waived His *Miranda* Rights**

First Circuit case law indicates that, at least where (1) a suppression issue is revisited at trial, or (2) trial evidence supports the earlier denial of a suppression motion, a court should consider any trial evidence bearing on the suppression issue. See United States v. Brown, 510 F.3d 57, 64 n.6 (1st Cir. 2007); United States v. Jesus-Rios, 990 F.2d 672, 675 n.2 (1st Cir.

1993); United States v. Vargas, 633 F.2d 891, 895 n.6 (1st Cir. 1980). Moreover, the logic of these decisions has added force in an extraordinary case such as this, where the Court sua sponte revisits a suppression ruling after the verdict. The government is unaware of any other instance in which a court took such a step.

Here, the trial evidence establishes more clearly than the suppression hearing evidence that Defendant voluntarily waived his Miranda rights. See Transcript April 9, 2008, pages 7- 11. The key portion of Agent Arnold's trial testimony reads as follows:

A. I believe I spoke to Juan Carlos first.

Q. Prior to speaking with the men, what did you do?

A. I presented my credentials showing that I was an immigration agent, informed them verbally that I was an immigration agent and advised them of their rights pursuant to Miranda versus Arizona

Q. In what language did you do this?

A. Spanish language.

Q. How did you Mirandize them?

A. I had a card in my credentials. I removed the card and read the Miranda rights verbatim from the card.

Q. After speaking with Juan Carlos, did you speak with Mr. Betancourt-Rodriguez and Mr. Fernandez-Roque individually or together?

A. They were together.

Q. And did you also Mirandize them?

A. Yes, I did.

Q. Did they indicate that they understood the Miranda warnings?

A. Yes, they did.

Q. This was done in Spanish?

A. Yes.

Q. Did they agree to waive their Miranda rights?

A. Yes, they did.

Q. A total of how many individuals did you Mirandize at the Charlton barracks that night?

A. Three people total.

Q. Was anyone else present when you were speaking with Mr. Fernandez-Roque?

A. Yes. Agent Mike Naylor of the Providence office, and there was other agents in and out of the room.

Q. And directing your attention to Mr. Fernandez-Roque, after he agreed or he indicated he understood his Miranda warnings and agreed to speak, what questions, if any, did you ask him?

A. I asked him his name, his date of birth, his parents' name, his place of birth, when he entered the country, and where he worked.

Q. And what did he reply with regard to his name?

A. Rafael Fernandez-Roque – sorry. Rafael Fernandez – I'm drawing a blank. I'm sorry.

Q. Roque?

A. Roque.

Q. And did he give you his date of birth and his parents' names?

A. He did. I don't recall, but I placed them in my notes.

Q. And he indicated his place of birth?

A. It was, I believe, Puerto Vallerta, Mexico.

Q. Did you ask him where he lived?

A. I did. He stated that he lived in Providence, Rhode Island but he could not remember where and that he had only been here for about a month.

Q. He had only been in Rhode Island for about a month?

A. Yes.

Q. Did you ask him where he worked?

A. I did. He stated he worked at Juan Carlos's garage.

Q. Prior to this date, May 30th of 2007, had you been involved in a related investigation out of Massachusetts?

A. Yes, I was.

Q. And as part of that investigation, had you done any surveillances of any garages?

A. Yes.

Q. And where was that garage?

MR. BERG: Object to this line of questioning, Judge.

MS. ROGERS: I'll withdraw that question.

THE COURT: Very well.

Q. <u>Did Agent Naylor ask any questions of the defendant through you as the interpreter, Mr. Roque, after you had Mirandized Mr. Roque in Spanish and he'd waived those rights?</u>

A. <u>Yes, he did.</u>

Q. <u>And what question was that?</u>

A. <u>There was a silver cellular phone Agent Naylor raised up and said, "Whose is this?" I don't know if I translated that verbatim or Roque just raised his hand, but he did raise his hand and indicated that was his cellphone.</u>

Transcript April 9, 2008, pages 7-11 (emphasis added).

As argued earlier and as this Court recognized in its May 21 opinion, an express waiver of <u>Miranda</u> rights is not always necessary and waiver may sometimes be implied solely from the Defendant's conduct. Here, the trial evidence quoted above makes plain that there was in fact an express waiver. Moreover, all of the surrounding evidence, including the quoted testimony, indicates that this waiver was knowing and voluntary. Particularly where the Court is taking the extraordinary step of revisiting a suppression ruling post-trial, after the government has tried the case and obtained a verdict that is now put in jeopardy because of the Court's second thoughts, it would make no sense to ignore that evidence and to in effect penalize the government for failing

to elicit the evidence earlier. And if the Court does consider this evidence, it should conclude that Defendant knowingly and voluntarily waived his Miranda rights.[1]

### C. The Court Failed to Rule on the Government's Argument that the Booking Exception to *Miranda* Applies to Many of Defendant's Statements

In its earlier opposition to Defendant's suppression motion the government argued that the booking exception applies to many of Defendant's statements. The Court has yet to address that argument, so the government renews it now.

The evidence in this case showed that the Immigration and Customs Agent was questioning Defendant to determine his "alienage." In such cases, Miranda warnings are not required. Routine booking questions do not constitute interrogation because such questions are not designed to elicit incriminating responses, and thus, do not require Miranda warnings. United States v. Reyes, 225 F.3d 71 (1st Cir. 2000). In Reyes, after the Defendant was arrested on drug conspiracy charges, an immigration agent read the Defendant the standard Miranda warnings, in Spanish. At the interview, when asked in Spanish whether he understood the rights read to him, the Defendant replied that he did. The agent did not seek a waiver of the Defendant's Miranda

[1] The Court's opinion that all interviews should be videotaped might sound appealing in theory, but in the real world it is neither practical nor feasible. The facts of this case make it all the more impractical for the Court to expect videotaping. It was after four in the morning when the defendants were processed at the Massachusetts State Police Barracks. Five individuals were being questioned at two different State Police Barracks, in different areas within those barracks, in a jurisdiction different from the investigating agency's. The Immigration Agent who spoke with Defendant Roque spoke with five different individuals that night. The agent had no affiliation with the Massachusetts State Police and had never been to the Barracks in Charlton before. The DEA case agent who was also present, was from Newport Rhode Island. He also had no affiliation with the Massachusetts State Police nor had he been to the Barracks before. The Barracks were located in a rural area and did not have the technology to video tape every person arrested. The reality of this arrest, as is the case in most arrests, is that events unfold in a totally unpredictable manner. The drugs had to be catalogued, processed, field tested, photographed, labeled, and secured. The targets had to be photographed, fingerprinted, interviewed, and booked. The Rhode Island agents most familiar with the investigation had been up for over 24 hours. Members of law enforcement in Massachusetts did not know the underlying facts of the case. For Courts to set the bar higher than the Constitution requires or to imply that there is something suspect when law enforcement does not record interviews is simply unfair. And finally, it would not have been legal for the Massachusetts State Police to surreptitiously record individuals in Massachusetts, as the State law requires two party consent.

rights. The First Circuit held that routine questions fall within the scope of the booking exception. Whether the booking exception is applicable is determined using an objective standard: "whether the questions and circumstances were such that the officer should reasonably have expected the question to elicit an incriminating response." Reyes, 225 F.3d at 76-77. In Reyes, questions requesting the Defendant's name, date of birth, and social security number fell within the booking exception to Miranda 's warning requirement. Id. The Court went on to recognize, "that individuals under arrest, particularly those who are in fact guilty of some criminal activity, may sometimes feel tempted to lie about even such basic facts as their identities (to which name, date of birth, and social security are all incidental). Law enforcement agents, through their experience, may often be aware of such temptations, and they may even harbor suspicions in some cases that a particular individual is about to lie. However, we cannot ask them to therefore forego all routine procedures and detain an individual without knowing anything about him, not even what to call him in the jail log." Id. at 77; see also United States v. Kiam, 432 F.3d 524, 529-31 (3d Cir. 2006)(Miranda warnings not required for routine immigration questions to determine alienage, even if arrestee suspected of other criminal conduct).

At the original suppression hearing, the immigration agent testified that he approached Defendant, identified himself as an immigration agent, presented his credentials to the Defendant, and then Mirandized the Defendant in the Spanish language. Agent Arnold testified that Defendant indicated that he understood his Miranda warnings. Suppression Hearing Tr. Vol 1, page 102. Agent Arnold further testified that he asked Defendant a series of questions related to his immigration status and his identity; standard questions to determine his alienage. Ibid., pages 102 - 103. These standard questions included asking Defendant his name, his date of birth, country of birth, city of birth, mother and father's name, where he was employed, and where he currently resided. Ibid., page 103. Defendant's responses to these questions are admissible,

without the need for a showing that Defendant waived his Miranda rights.[2]

### D. The Court Lacks Power to Order a New Trial at this Late Juncture

If the Court rejects the above arguments and also rejects the government's position that any error in the admission of the evidence was harmless (a position that will be advanced in a separate filing responding to the defense filing on this point), it will have to confront a procedural problem. There is only one procedural mechanism that the government is aware of under which the Court could order a new trial: Fed. R. Crim. P. 33. As now explained, it is too late to invoke that mechanism, whether by a new trial motion (no such new trial motion was ever made asserting the suppression issue), or, as in this case, by a sua sponte action of the Court.[3]

Rule 33 provides that a new trial motion "must be filed within 7 days after the verdict or finding of guilty" unless it is based on a claim of "newly discovered evidence," in which case the defendant has three years to make the filing. Fed. R. Crim. P. 33(b); see generally United States v. Moran, 393 F.3d 1, 9 (1st Cir. 2004); United States v. Diaz, 300 F.3d 66, 78 (1st Cir. 2002).

In the present case, the jury returned its verdict on April 11, 2008. Defendant filed a new trial motion on April 18, 2008. However, Defendant did not raise the suppression issue as a ground for a new trial, and the Court has already denied the motion. Moreover, Defendant never asked to amend his new trial filing, and even if he had done so the First Circuit has held that a Defendant cannot "amend" or "supplement" his new trial motion and thereby circumvent Rule 33's mandatory time restrictions. See United States v. Nelson-Rodriguez, 319 F.3d 12, 40-41 (1st Cir. 2003); see also United States v. Renick, 273 F.3d 1009, 1019 (11th Cir. 2001); United

---

[2] These responses include Defendant's statements concerning his (1) name, (2) date and place of birth, (3) place of residence, and (4) place of employment.

[3] The new trial motion that was filed in this case asserted different grounds. It never raised the suppression issue.

States v. Bramlett, 116 F.3d 1403, 1405-06 (11th Cir. 1997).[4]

Accordingly, because the seven-day window closed long ago, this Court has the power to order a new trial based on the suppression issue only if that issue constitutes (or is based on) "newly discovered evidence" within the meaning of Rule 33(b)(1). For two independent reasons, there is simply no "newly discovered evidence" here for purposes of this rule.

First, as used in Rule 33, the word "evidence" means evidence relating to guilt or innocence –- evidence that could have been admitted at trial -- not evidence of alleged collateral errors. See United States v. Hall, 324 F.3d 720, 722-23 (D.C. Cir. 2003) (summarizing holdings of Fourth, Fifth and Ninth Circuits on this point, noting Tenth Circuit decision to contrary, and resolving case on related but distinct ground); cf. Conley v. United States, 323 F.3d 7, 10 (1st Cir. 2003) (en banc) (observing that Defendant who makes Rule 33 claim based on newly discovered evidence "bears the heavy burden of showing that the evidence would probably result in an acquittal upon retrial"). It is for this reason that claims of ineffective assistance of counsel are not covered by Rule 33(b)(1); they rest on collateral allegations, not newly discovered "evidence" pertaining to guilt or innocence. See United States v. Ross, 338 F.3d 1054, 1057 (9th Cir. 2002); United States v. Mett, 65 F.3d 1531, 1533 (9th Cir. 1995); United States v. Smith, 62 F.3d 641, 648-51 (4th Cir. 1995); United States v. Hanoum, 33 F.3d 1128, 1130-31 (9th Cir. 1994); see also United States v. DeRewal, 10 F.3d 100, 104-05 (3d Cir. 1993) (tentatively endorsing this view but deciding case on different ground).[5]

---

[4] It is also worth noting, relatedly, that there is a tight deadline for filing a motion for reconsideration of the denial of a new trial motion. See United States v. Ramirez, 954 F.2d 1035, 1038 (5th Cir. 1992); United States v. Miller, 869 F.2d 1418, 1420-21 (10th Cir. 1989); United States v. Cook, 670 F.2d 46, 48 (5th Cir. 1982); see also United States v. Connell, 6 F.3d 27, 29 n.3 (1st Cir. 1993) (citing Miller and Cook with apparent approval but avoiding issue of whether reconsideration motion in that case was untimely since government had not briefed question and ruling on merits was easier). And such a motion would be to no avail in any event since the suppression issue was never raised in the original motion.

[5] The First Circuit has not squarely addressed this issue. Its prior decisions have focused not on what constitutes "evidence" under Rule 33 but on the distinct question of when evidence can be considered "newly discovered." See, e.g., United States v. Mojica-Rivera, 435 F.3d 28, 32 (1st Cir. 2006); United States v. Desir, 273 F.3d 39, 42-44 (1st Cir. 2001); United States v.

Here, neither the suppression issue itself nor the legal arguments bearing on that issue can be considered evidence of guilt or innocence. It is not information that could be admitted at a new trial. Thus, even if these categories of information can be considered "newly discovered" (and they cannot), the more generous three-year time period in Rule 33(b)(1) is inapplicable.

Second, and in any event, the suppression issue and the legal and factual arguments bearing on it were all known before and during trial. Thus, even under the untenable assumption that these items constitute "evidence" for purposes of Rule 33, that "evidence" cannot even remotely be characterized as "newly discovered." Two First Circuit decisions are on point. See, e.g., Mojica-Rivera, 435 F.3d at 32; Desir, 273 F.3d at 42-44. There is no principled basis for distinguishing them.[6]

---

Osorio-Pena, 247 F.3d 14, 18-20 (1st Cir. 2001). These cases do appear to assume, incorrectly, that evidence concerning collateral issues may count as "evidence" under Rule 33, but they make no holding on this point.

[6] It is also impossible to characterize a district court's mere change of heart on a legal issue as "newly discovered evidence" for purposes of the rule.

For either or both reasons, even if the Court were to reject the arguments made above and also conclude that any error in the admission of Defendant's statements was not harmless, it would still lack power to grant a new trial on this basis. See, e.g., Nelson-Rodriguez, 319 F.3d at 40-41; Diaz, 300 F.3d at 78.

Respectfully submitted,

UNITED STATES OF AMERICA

By its Attorneys,

ROBERT CLARK CORRENTE
United States Attorney

/s/ Mary E. Rogers
MARY E. ROGERS (RI Bar #3107)
Assistant U.S. Attorney
U.S. Attorney's Office
50 Kennedy Plaza, 8th FL
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
email mary.rogers@usdoj.gov

DONALD C. LOCKHART
Assistant U.S. Attorney
U.S. Attorney's Office
50 Kennedy Plaza, 8th FL
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
email donald.lockhart2@usdoj.gov

CERTIFICATION

I hereby certify that on the 29th day of May 2008, I caused a copy of the Government's Motion For Reconsideration and Memorandum in Support of the Government's Motion For Reconsideration to be filed electronically and it is available for viewing and downloading from the ECF system.

Electronic notification:

Andrew Berg, Esq.
128 Dorrance Street, Suite 400
Providence, RI 02903.

/s/ Mary E. Rogers

MARY E. ROGERS
Assistant U.S. Attorney
RI Bar #3107
U.S. Attorney's Office
50 Kennedy Plaza, 8th FL
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
email mary.rogers@usdoj.gov

DONALD C. LOCKHART
Assistant U.S. Attorney
U.S. Attorney's Office
50 Kennedy Plaza, 8th FL
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
email donald.lockhart2@usdoj.gov