IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA )
)
v. ) Cr. No. 07-100S
)
RAFAEL FERNANDEZ-ROQUE, )

GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO VACATE AND TO COURT'S MAY 21 ORDER ASKING FOR BRIEFING ON HARMLESS ERROR

Comes now the United States of America, by and through its attorneys, Robert C. Corrente, United States Attorney for the District of Rhode Island, and Mary E. Rogers, Assistant U.S. Attorney, and hereby (1) objects to the Defendant's Motion To Vacate the Jury Verdict, and (2) responds to the Court's May 21 Order requesting briefing on whether any error in the admission of Defendant's statements was harmless error, on the grounds set forth in the accompanying memorandum of law. The government also incorporates by reference the Motion for Reconsideration and Memorandum in support that it filed yesterday.

Respectfully submitted,

UNITED STATES OF AMERICA

By its Attorneys,

ROBERT CLARK CORRENTE
United States Attorney

/s/ MARY ROGERS
MARY ROGERS
Assistant U.S. Attorney
RI Bar #3107
U.S. Attorney's Office
50 Kennedy Plaza, 8th FL
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
email mary.rogers@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Cr. No. 07-100S |
| | ) | |
| RAFAEL FERNANDEZ-ROQUE | ) | |

MEMORANDUM IN SUPPORT OF
GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO VACATE
AND TO COURT'S MAY 21 ORDER ASKING FOR BRIEFING ON HARMLESS ERROR

## A. Introduction

Because any error in the admission of Defendant's statements was harmless, this Court should deny Defendant's Motion to Vacate his conviction. In any event, that motion should also be denied for the reasons set forth in (1) the government's Motion for Reconsideration filed yesterday and (2) the government's original opposition to Defendant's suppression motion.

## B. Background

Defendant filed a Motion to Suppress on December 19, 2007. That motion stated, in essence, that the Defendant did not know whether any constitutional violations had occurred, but that the Defendant was filing the motion in case something turned up. The Defendant then listed three issues that "*may* warrant suppression . . .", including that the Defendant "invoked his right to counsel while in custody." This claim turned out to be untrue. The Defendant also claimed that the Defendant's "arrest was without probable cause." The evidence established that the probable cause supporting the arrest was overwhelming. And finally, the Defendant also claimed that the Defendant "*may* not have been informed of his Miranda rights and/or made a knowing waiver prior to interrogation." The Defendant provided no evidence to support any of his *possible* claims in his memorandum in support of his motion to suppress. The five days of testimony involved both the Defendant Roque and the co-defendant Verdugo[1]. Verdugo's

[1] Testimony was taken on January 14, 17, 22, 23, and 25, 2008.

counsel and the government agreed to provide written memorandum summarizing the evidence adduced over the five days of testimony and argument on the suppression issues. Counsel for Defendant Roque stated that he did not wish to file any written memorandum but wished to only argue orally. The Defendant's attorney later admitted that this was because he did not wish to alert the government to its omission in asking the follow up question as to whether the Defendant waived his Miranda rights. On February 13, 2008, oral arguments were held. After the Defendant's attorney raised the issue for the first time, the government requested the opportunity to address the issue. The Court agreed to permit written memorandum. The government filed its memorandum addressing the waiver of Miranda and Booking Exception on February 15, 2008. On that date, the government also sought to reopen the hearing for the limited purpose of presenting Agent Arnold's testimony that Roque had waived his Miranda rights. Counsel for Defendant Roque filed their memorandum on February 18, 2008. Trial began on April 7, 2008. The Court did not formally deny the suppression motion until April 9, 2008.

Without requesting further input from the parties, and in the absence of any renewed defense motion, the Court issued a sua sponte Order on May 21, 2008, granting Defendant's Motion To Suppress, after the Court had originally denied that motion, and after the Jury had returned a verdict of guilty against the Defendant for Conspiracy to Distribute and Possess with the Intent to Distribute 5 or more Kilograms of Cocaine. In that same Order, the Court asked for briefing on the question of harmless error. Defendant now brings a motion to vacate the Jury's Guilty Verdict. In addition to the arguments that it made earlier, the government submits that the admission of Defendant's statements was harmless.

**C. Argument**

The evidence presented at trial against the Defendant was overwhelming. The evidence included intercepted conversations occurring between May 26, 2007 and May 30, 2007, between the co-conspirators. Defendant Roque stipulated to all of the transcripts interpreting the intercepts. In these conversations the participants of the conversation, including the Defendant,

were identified by their voices and by the cellular telephone number they were using at the time of the conversation. The men spoke in cryptic, stilted language, which language Drug Enforcement Administration (DEA) Task Force Agent (TFA) Michael Naylor explained, involved coded drug conversation. TFA Naylor explained what the code meant. As noted in the government's memoranda in support of both its objection to the Defendant's motion for judgment of acquittal and motion for a new trial, the government presented evidence showing that

a) the Defendant spoke with the leader of the conspiracy, Juan Carlos a/k/a Omar Altamirano-Nunez, and that the conversations support the inference that Fernandez-Roque knowingly agreed and conspired to assist others in obtaining cocaine;

b) the Defendant accompanied two associates who left Providence to travel to Springfield, Massachusetts, at a late hour, after the Defendant pointed out to his associate that the Defendant was scheduled to be at work in Newport the following morning by 10 a.m.;

c) the Defendant traveled with one associated, while another co-conspirator drove a separate vehicle;

d) the logical inference may be drawn that drug dealers would not bring along an innocent individual on a drug deal conservatively valued at over half a million dollars;

e) the Defendant checked into a motel at 1 in the morning, stayed only an hour and a half, then drove off at approximately 2:30 a.m. with his two associates, in two different vehicles, traveling a circuitous route for approximately one hour prior to the drugs being picked up;

f) the circuitous route of travel coincided with cellular conversations between the associates and the drug supplier, Adolfo Verdugo, who had transported the drugs

in his tractor trailer truck from California;

g) a telephone call made by the Defendant was intercepted immediately after the 29 kilograms of cocaine were picked up from co-defendant Verdugo. The Defendant called Juan Carlos and informed him, "I'm ready." The Defendant initiated the telephone call to a co-conspirator. The Defendant used cryptic language, interpreted by Task Force Agent Michael Naylor as code meaning that the cocaine had been transferred;

h) the 29 kilograms of cocaine were located directly behind the defendant in the vehicle.

The evidence also showed that just over 29 kilograms of cocaine were seized on May 30, 2007, in Springfield, Massachusetts. This evidence, by itself, is overwhelming evidence of the Defendant's guilt.[2] The evidence at trial also included the testimony of a Springfield, Massachusetts DEA special agent, who was present when the Defendant was arrested and then transported to the Massachusetts State Police Charlton Barracks[3]. The DEA agent testified that the cellular telephone (which the Defendant later admitted was his to Immigration Special Agent Arnold) was found on the Defendant's person. The Defendant's voice was identified as the voice intercepted over the telephone. Ownership of the telephone is not what provides the key evidence of guilt in a wiretap trial; rather, it is the identity of who spoke on the telephone and engaged in the criminal conversations. If the Defendant had wished to make a claim rebutting the voice identification, he could easily claim that the co-defendant in the vehicle with him the night in question borrowed Roque's telephone. Thus, the fact that the Defendant admitted ownership of the telephone, cannot be credibly argued to be key evidence. Of equal importance

---

[2] Of note is the fact that in the government's previous responses, the government did not even feel the need to reference the Defendant's admissions that are now in question in support of the government's argument as to the sufficiency of the evidence.

[3] As the government does not have the complete transcript of the trial, the government cannot identify whether this agent was Special Agent John Barron or Special Agent Jon Shankweiler.

is the fact that the Defendant's attorney conceded during the trial that Roque was the voice speaking on the wiretap intercepts over the telephone. The Defendant's defense has always been, and still is, that he was "merely present" and not criminally culpable of the conspiracy. The Defendant continues to argue in his motion to vacate the guilty verdict that the wiretap intercepts involving Roque are not criminal. The Defendant continues to seek to put an innocent spin on the conversations involving Roque. Therefore, the admission of ownership of the cell phone is at most, harmless error.

The Defendant's claim that, the admission of the Defendant's statement that he worked for Juan Carlos at his garage is prejudicial, is also without merit. The government reiterates that this admission is admissible under the booking exception, United States v. Reyes, 225 F.3d 71 (1st Cir. 2000) and that the trial testimony on the Miranda waiver issue should be considered.. However, even if this Court were to disagree with these and other arguments advanced by the government, the admission was harmless. The evidence was uncontradicted that the Defendant knew Juan Carlos, that the Defendant spoke with Juan Carlos over the telephone the night in question, that the Defendant was a passenger in a car following Juan Carlos, that after the delivery of cocaine was made, the Defendant telephoned Juan Carlos and stated, "I'm ready." While the Defendant went to great lengths to show that the Defendant was suppose to work in Newport at a restaurant the following day, the admission that he also worked at Juan Carlos' garage is not mutually exclusive. The government did not dispute that the Defendant was supposed to work in Newport the following day, nor that the Defendant was employed at a restaurant previously in Providence. To the contrary, TFA Naylor admitted that he believed the Defendant was so employed. The government did not argue in closing that the Defendant "lied" about working at the restaurant. Additional evidence, establishing harmless error, includes the fact that the Defendant did not even leave Providence, Rhode Island to travel to Springfield, Massachusetts until ***11:24 p.m.*** on May 29, 2007. (See government's trial exhibit #10). The testimony also showed that the Defendants did not arrive in Springfield, Massachusetts until

approximately 1 a.m. on May 30, 2007. This severely undercut the claim by the Defendant that he all he wanted to do was get home because he was concerned about being at work in Newport on the morning of May 30, 2007.

The Defendant's claim that the statement established a "master/servant" relationship and that therefore the jury would conclude the Defendant was one of Juan Carlos' "henchmen" is also without merit. The government did not make such an argument, implicitly or explicitly. The statement by Roque that he worked for Juan Carlos at the garage merely showed that the two men knew each other. There was ample other evidence establishing the same fact.

The claim by Defendant that the statement that Roque worked at Juan Carlos' garage is prejudicial is without merit. At most, such evidence constitutes harmless error. The evidence before the jury, with the exclusion of the statements at issue, was overwhelming proof of the Defendant's guilt. Thus, any error was harmless beyond a reasonable doubt and therefore the Court should not vacate the Jury's Guilty Verdict. See, e.g., United States v. Downs-Moses, 329 F.3d 253, 267-68 (1st Cir. 2003) (any error in admission of defendant's confession was harmless).

Respectfully submitted,

UNITED STATES OF AMERICA

By its Attorneys,

ROBERT CLARK CORRENTE
United States Attorney

/s/ MARY ROGERS

MARY ROGERS
Assistant U.S. Attorney
RI Bar #3107
U.S. Attorney's Office
50 Kennedy Plaza, 8th FL
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
email mary.rogers@usdoj.gov

CERTIFICATION

I hereby certify that on the 30th day of May 2008, I caused a copy of the Government's Response to Defendant's Motion to Vacate and Memorandum in Support of, as well as briefing regarding whether the admission of the statements was harmless error, to be filed electronically and it is available for viewing and downloading from the ECF system.

Electronic notification:

Andrew Berg, Esq.
128 Dorrance Street, Suite 400
Providence, RI 02903

/s/MARY ROGERS
MARY ROGERS
Assistant U.S. Attorney
RI Bar #3107
U.S. Attorney's Office
50 Kennedy Plaza, 8th FL
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
email mary.rogers@usdoj.gov