UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA

V. C.R. No. 07-100-3 S

RAFAEL FERNANDEZ-ROQUE

**DEFENDANT'S MEMORANDUM IN SUPPORT OF HIS OBJECTION TO GOVERNMENT'S MOTION FOR RECONSIDERATION**

The Government has filed a Motion For Reconsideration this Court's post-trial granting of Defendant Rafael Fernandez-Roque's ("Fernandez-Roque") Motion To Suppress. The Government's Memorandum raises three grounds, which are discussed as follows.

## I. TRIAL TESTIMONY CANNOT PROPERLY AND FAIRLY BE CONSIDERED TO REVERSE THE GRANTING OF FERNANDEZ-ROQUE'S MOTION TO SUPPRESS.

Obviously recognizing that it failed to establish a *Miranda* waiver at the suppression hearing, the Government argues that this Court should have considered **trial** testimony by Agent Arnold of a purported waiver by Fernandez-Roque. Memorandum In Support Of Government's Motion For Reconsideration ("Government's Memorandum") at 1-5. This suggestion is neither supported by the cited case law, nor fair to Fernandez-Roque.

In making its argument for this Court to consider trial testimony in reconsidering its granting of the Motion To Suppress, the Government cites a handful of First Circuit cases in which the Court of Appeals notes that in reviewing suppression motion denials, it may consider trial testimony. Government's Memorandum at 1-2, *citing United States v. Brown*, 510 F.3d 57, 64, fn. 6 (1st Cir. 2007); *United States v. Jesus-Rios*, 990 F.2d

672, 675, fn. 2 (1st Cir. 1993); *United States v. Vargas*, 633 F.2d 891, 895, n.6 (1st Cir. 1980). At the outset, these cases are clearly distinguishable by virtue of the fact that they dictate the standard of review for an **appellate** court reviewing whether a trial court committed error. This broadening of the review record is obviously in line with the well-established dictate that the Court of Appeal can validate a correct result even if premised on improper procedure or reasoning. *See e.g. United States v. Dubon-Otero*, 292 F.3d 1, 16 fn. 22 (1st Cir. 2002). Here, besides the fact that this matter does not concern an appellate review, the Government is not seeking the affirmation of what it perceives as a correct result. Rather, it is assailing what the Government contends is an incorrect ruling. As such, review of the Government's Motion should be limited to the suppression hearing record that was considered by this Court.

Further, close examination of the cases cited by the Government run counter to its suggestion that trial testimony should be considered here. In the *Vargas* case, the Court noted in dicta that using trial testimony to "undermine" a ruling by the trial judge, as opposed to supporting it, "is apparently discouraged, at least when the motion to suppress has not been renewed and reconsidered during the course of the trial." *Vargas*, 633 F.2d 891, 895, fn. 6, *citing* 3 W. LaFavre, Search and Seizure § 11.7(c) (1978). The First Circuit recognized this aspect of *Vargas* in *Jesus Rios.* 990 F.2d 672, 675, fn. 2. In the instant case, during the trial, neither Fernandez-Roque, nor the Government, asked this Court to reconsider its ruling. Accordingly, in line with the cited cases, trial testimony should not be considered in the Government's effort to undermine this Court's ruling.

In addition to the lack of case law supporting the Government's request for the Court to consider trial testimony, fundamental fairness to Fernandez-Roque should also weigh against the Government's suggestion. First, Fernandez-Roque should not be placed in a worse (or better) position than he would have been pre-trial because of an error by this Court. Fairness and equity demand that this Court only consider evidence that would have been before it at the time of its initial ruling. Second, and perhaps more importantly, Fernandez-Roque made strategic decisions during the hearing for the Motion To Suppress that were based on the evidence then before this Court. As noted in his Supplemental Memorandum In Support of His Motion To Suppress, Fernandez-Roque, through his counsel, immediately recognized during Agent Arnold's hearing testimony (which was near the beginning of the proceedings) that a waiver had not been established. Consequently, counsel's strategy during the entire hearing was altered. For example, counsel did not engage in extensive cross-examination of Agent Naylor because attacking his credibility was not necessary, and could open the door for further testimony regarding a possible waiver. Further, although strongly considered by counsel, he decided not to call witnesses to attack the fact that Agent Arnold's Spanish was unintelligible in several key respects.[1] Because Fernandez-Roque's strategy was premised on the evidence presented at the Suppression Motion hearing, to allow extraneous evidence to be considered in an attempt to undermine this Court's ruling would deny Fernandez-Roque an opportunity to fully address the Government's case.

---

[1] The record contains the following statement by counsel for Mr. Fernandez-Roque: "In addition [to not conducting further cross-examination of Agent Naylor], I wanted to let the Court know, I did mention a possible witness yesterday. I will not be calling any witnesses." Suppression Hearing Tr. Vol. 4, p.3.

For these reasons, this Court correctly only considered the evidence presented at the Suppression Motion hearing, and should reject the Government's argument that the record should be expanded on reconsideration.

## II. THE "BOOKING EXCEPTION" TO *MIRANDA* DOES NOT APPLY HERE.

At hearing, and in its Memorandum, the Government seeks to sidestep the entire issue of whether a waiver of *Miranda* rights occurred by claiming that the questioning of Mr. Fernandez-Roque was merely for the purpose of booking. However, both the facts and case law require rejection of this assertion.[2]

In support of its argument, the Government cites *United States v. Reyes*, 225 F.3d 71 (1st Cir. 2000), for the proposition that questions asked during the administrative booking process do not require prior "Mirandization" of the accused. However, *Reyes* is easily distinguishable from the facts here. In *Reyes*, an INS agent assigned to work with the DEA "interviewed appellant for the purpose of 'booking' him; i.e., obtaining the information required by the DEA's standard personal history form for administrative purposes." 225 F.2d at 74. The *Reyes* Court held that this generic questioning relating to "name, date of birth, and social security number - - [fell] within the booking exception to *Miranda*'s warning requirement." *Id*. at 76.

On the other hand, the facts in the instant case demonstrate that Agents Arnold and Naylor were not questioning Mr. Fernandez-Roque merely for the purpose of filling in booking sheets, but rather, were expressly seeking incriminating information. At the

[2] This portion of Fernandez-Roque's argument is exactly duplicated from his Supplemental Memorandum In Support of His Motion To Suppress. For this Court's convenience, it has been "cut and pasted" into this Memorandum.

outset, both Agent Naylor and Agent Arnold testified that a member of the Massachusetts State Police was already present in the cellblock performing booking procedures. To this end, Agent Naylor stated, "There was a Massachusetts state trooper there [in the cellblock] doing the booking who spoke Spanish. He was interviewing [Mr. Fernandez-Roque] enough to do the booking sheets and things like that, sir." Suppression Hearing Tr. Vol. 3, p. 191. Agent Arnold similarly testified that when he and Agent Naylor were in the cellblock, Mr. Fernandez-Roque "was in the process of being booked" by the Massachusetts State Police. Suppression Hearing Tr. Vol. 2, p. 25. Accordingly, neither Agent Naylor nor Agent Arnold were questioning Mr. Fernandez-Roque for the purpose of booking, but rather, were seeking incriminating information.

In point of fact, during cross-examination, Agent Arnold admitted his goal was to obtain incriminating information. To this end, he testified as follows:

> Q: [by Mr. Berg] And I think you used the term or you said something about trying to determine alienage and deportability?
>
> A: Yes, sir.
>
> Q: Is that what your goal was at that point?
>
> A: That was one of the goals, to see if we could place an immigration detainer on them.
>
> Q: Is it also one of your goals to find out if this person might have committed a criminal offense, such as illegal reentry?
>
> A: Yes, sir.
>
> Q: So it was also one of your goals to find out if a crime had occurred; is that correct?

A: Yes, sir.

Suppression Hearing Tr. Vol. 2, pp. 23-24.

In Agent Naylor's testimony, he admits to participating in the questioning by feeding Agent Arnold questions. To this end, Agent Naylor testified as follows:

> Q: [by Ms. Rogers] And were you asking or participating in any way with Agent Arnold?
>
> A: Yes. I was asking him some questions to ask. I asked him – one of the questions, you know, did they tell you where they work was one question. Something about their employment. And another question was on the phones, I asked whose phone was whose [sic].

Suppression Hearing Tr. Vol. 3, pp. 108-09.

Clearly, the questioning by Agents Arnold and Naylor was not part of the routine booking process; which was being done by state law enforcement; but rather, was an interrogation designed to elicit incriminating statements. Consequently, the booking exception to *Miranda* does not apply.

The First Circuit, as well as most sister courts considering the issue in like circumstances have similarly concluded. In *United States v. Doe*, 878 F.2d 1546 (1st Cir. 1989), the case for which the *Reyes* Court relied, the First Circuit recognized, "The cases that create [the booking exception] . . . note that it does not apply where the law enforcement officer, under the guise of asking for background information, seeks to elicit information that may incriminate." 878 F.2d at 1551; *citations omitted*. The *Doe* Court went on to suppress un-*Mirandized* statements that were aimed at determining alienage for the purpose of potential prosecution. Other courts have similarly held. *See e.g.* *United States v. Parra*, 2 F.3d 1058 (10th Cir. 1993)(Questions asked by immigration

agent for purpose of obtaining incriminating information regarding illegal alienage, that were separate from booking process, do not fall under booking exception); *United States v. Carvajal-Garcia*, 54 Fed. Appx. 732, 2002 LEXIS 25434 (3rd Cir. 2002)(INS agents questioning of suspected illegal immigrant did not fall under booking exception because defendant was already booked, and the questions were designed to seek incriminating statements regarding immigration status); *United States v. Gonzalez-Sandoval,* 894 F.2d 1043 (9th Cir. 1990)(Questioning by border patrol agent of defendant already in holding cell pending criminal charges held improper in absence of *Miranda* warnings).

Accordingly, because Agents Arnold and Naylor's interrogation was not for the purpose of booking Mr. Fernandez-Roque, the Government's attempt to invoke this exception must fail.

## III. RELIEF TO FERNANDEZ-ROQUE SHOULD NOT BE DENIED ON PROCEDURAL GROUNDS.

As a fall back position, the Government argues that should this Court reject all of its substantive arguments, relief should be denied to Fernandez-Roque because a Rules of Criminal Procedure 33 ("Rule 33") motion is untimely. Government's Memorandum at 7-9. However, for the following reasons, the Government's attempts to procedurally bar justice should be rejected.

As noted in Fernandez Roque's Memorandum In Support Of Motion To Vacate, at 2, the circumstances surrounding this Court's post-verdict Order reversing its previous denial of the Motion To Suppress is extraordinarily unusual. As such, Fernandez-Roque suggested that if his Motion To Vacate was not the proper procedural vehicle for this Court to consider whether a new trial was warranted, then this Court should cite the proper mechanism in ordering the requested relief. *Id*. fn. 1.

Perhaps the clearest vehicle to consider Fernandez-Roque's request for relief, and the one squarely attacked by the Government in its Memorandum, is pursuant to Rule 33. Rule 33 allows this Court to order a new trial if "the interest of justice so requires." Although most new trial motions are addressed to the weight of the evidence, as was the case here, the Rule is explicitly broad enough to cover any situation warranting a new trial if justice so demands. *See e.g. United States v. Carpenter*, 494 F.3d 13 (1st Cir. 2007)(New trial order due to inflammatory and pejorative statements by Government during closing arguments affirmed on appeal).

Here, Fernandez-Roque did file a timely Motion For New Trial under Rule 33. At the time, he did not raise an argument that his Motion To Suppress was improperly denied. However, in light of this Court's initial and unequivocal denial of Fernandez-Roque's Motion To Suppress, including this as a ground in his Motion For New Trial would have been futile. While typically the failure to raise an issue is considered a waiver of later review, in *Bennett v. City of Holyoke*, 362 F.3d 1, 6 (1st Cir. 2004), the First Circuit cited equitable principles in holding as follows:

> Ordinarily, we will invoke [an] exception and excuse a party from failing seasonably to have raised a defense only if (i) at the time of the procedural default, a prior authoritative decision indicated that the defense was unavailable, and (ii) the defense became available thereafter by way of supervening authority (say, an overruling of the prior decision or a legislative clarification). *Citing United States v. Lopez-Pena*, 912 F.2d 1542, 1549 (1st Cir. 1989). Put another way, we will excuse a party for failing to raise a defense only when the defense if timely asserted, would have been futile under binding precedent. *Citing id.* (refusing to excuse the failure to object when "no binding rule in this circuit . . . necessarily foredoomed an objection"). Other courts have followed this same general praxis. *See Curtis Pub. Co. v. Butts*, 388 U.S. 130, 143-45, 18 L. Ed. 2d 1094, 87 S. Ct. 1975 (1967); *Holzsager v. Valley Hospital*, 646 F.2d 792, 794-96 2nd Cir. 1981).

In the instant case, at the time Fernandez-Roque filed his Motion For New Trial, this Court's "prior authoritative decision indicated that the defense [of admission of illegally obtained statements] was unavailable." Further, the issue became viable, after the fact, when a "supervening authority" (this Court), "overruled a prior decision." Accordingly, Fernandez-Roque cannot be faulted from omitting this ground from his timely Motion For New Trial, and it should not be deemed waived in this regard. It follows that it should be within this Court's inherent power to reconsider the denial of Fernandez-Roque's Rule 33 Motion, and grant a new trial if "the interest of justice so requires."

In its Memorandum, the Government argues that case law prohibits Fernandez-Roque from amending or supplementing the grounds for his new trial filing past the mandatory time limit. Government's Memorandum at 7, *citing United States v. Nelson-Rodriguez*, 319 F.3d 12, 40-41 (1st Cir. 2003); *United States v. Renick*, 273 F.3d 1009, 1019 (11th Cir. 2001); *United States v. Bramlett*, 116 F.3d 1403, 1405-06 (11th Cir. 1997). However, the cases cited by the Government address circumstances in which issues that were available to the defendant at the time the Rule 33 motion was filed, were either negligently or knowingly omitted. As outlined above, the law of the case at the time took the issue of the admissibility and legality of the Fernandez-Roque's jailhouse statements out of the realm of available defenses. Thus, the cases cited by the Government are inapposite. There is no authority that Fernandez-Roque can find that would prohibit this Court from vacating its denial of his Motion For New Trial, considering the arguments contained in the Motion To Vacate in the context of Rule 33, and providing relief to remedy a manifest injustice.

Accordingly, this Court may properly consider Fernandez-Roque's Motion To Vacate as a motion for new trial under Rule 33, and the Government's contrary arguments in its Motion For Reconsideration should be rejected.[3]

## Conclusion

For the foregoing reasons, and others that may be presented at a hearing of this matter, Fernandez-Roque respectfully requests this Court deny the Government's Motion For Reconsideration, and grant his Motion To Vacate.

Respectfully submitted,

RAFAEL FERNANDEZ-ROQUE
By his attorney

/S/ Andrew Berg
ANDREW BERG Bar No. 4754
Sammartino & Berg LLP
128 Dorrance Street
Suite 400
Providence, RI 02903
(401) 274-0113
(401) 274-0175

[3] If this Court finds that Fernandez-Roque suffered prejudice as a result of the improperly admitted evidence, then the Government's efforts to procedurally bar a retrial are merely delaying the inevitable. If this Court does not grant relief now, this case will surely be returned to this Court either pursuant to a successful habeas corpus petition under 28 U.S.C. §2241(3) ("in custody in violation of the Constitution or laws of the United States"), or after certain remand by the Court of Appeals. Regarding the latter, it is difficult to imagine the First Circuit not vacating the judgment of conviction in the face of a finding by this Court that an error occurred that was not harmless beyond a reasonable doubt.

**CERTIFICATION OF SERVICE**

I hereby certify that on this 4th day of June 2008, that I caused a true copy of this Memorandum to be filed, via electronic case filing, to the following counsel of record:

Assistant U.S. Attorney Mary Rogers
Office of the United States Attorney
50 Kennedy Plaza, Fleet Center
8th Floor
Providence, RI 02903

/s/ Andrew Berg
ANDREW BERG